IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America,

       Plaintiff,

       v.                         Case No. 2:04-cv-841

One Hundred Thirty-Eight
Thousand Nine Hundred Twenty
and 00/100 Dollars ($138,920.00)
in United States Currency

       And

A 2002 Chevrolet Avalanche
VIN 3GNEK13T22G242774,

       Defendants.


OPINION AND ORDER

This is an in rem action for forfeiture brought pursuant to 21 U.S.C. §881(a)(6). The government alleges that the defendant property, specifically, $138,920.00 in United States currency and a 2002 Chevrolet Avalanche automobile, is subject to forfeiture as being "moneys ... or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance ..., all proceeds traceable to such an exchange, and all moneys ... used or intended to be used to facilitate any violation" of Subchapter I of Chapter 13, Title 21 of the United States Code. 21 U.S.C. §881(a)(6).

The government filed the verified complaint for forfeiture on September 1, 2004. An in rem arrest warrant was issued by the magistrate judge on September 7, 2004. On September 14, 2004, an answer and claim to the defendant property was filed by counsel on behalf of Jorge Mendez aka Enrique Carrillo, as claimant. The

answer was not signed by the claimant; rather, it is signed only by counsel, who makes no statements verifying the contents of the answer.  Attached to the answer were two claims, one relating to the currency and one relating to the automobile.  These documents appear to be copies of claims which were submitted to the Drug Enforcement Administration during administrative forfeiture proceedings.  The certificates of service are dated June 3, 2004 and indicate that the documents were mailed to the Asset Forfeiture Section of the Drug Enforcement Administration.  The claims state that Jorge Luis Mendez aka Enrique Carrillo is the lawful owner of the defendant property.  They also contain the language that Jorge Luis Mendez "declare[s] under penalty of perjury that he has read the foregoing claim and it is true to the best of his knowledge, information, and belief."  This declaration is followed by a typed signature, with no handwritten signature.

On September 22, 2004, the government filed a motion to strike the claim.  In a preliminary pretrial order filed on November 15, 2004, the magistrate judge gave claimant until December 17, 2004, to respond to the motion to strike.  No memorandum contra was filed, and on December 22, 2004, the magistrate judge filed an order granting the motion to strike the claim.  On February 11, 2005, the government filed a motion for summary judgment.  On July 14, 2005, claimant's counsel filed a response to the government's notice of deposition and requests for admissions, answers to interrogatories and production of documents.  Counsel stated that his client was deported in 2004 and that counsel had been unable to speak with him since that time, with the exception of one telephone call made by claimant to counsel.  Counsel indicated that he would

therefore be unable to respond to the government's discovery requests.  On August 12, 2005, the government filed a supplement to its motion for summary judgment, arguing that since the claimant had failed to respond to the government's request for admissions served on July 8, 2005, all requests for admissions were deemed to be admitted pursuant to Fed.R.Civ.P. 36(a).

This matter is now before the court on the government's motion for summary judgment.

The procedure for granting summary judgment is found in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).

The Sixth Circuit Court of Appeals has recognized that Liberty Lobby, Celotex and Matsushita effected "a decided change in summary

3

judgment practice," ushering in a "new era" in summary judgments. Street v. J. C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989). The court in Street identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. Id. at 1479. In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Id. (quoting Liberty Lobby, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. Id. It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" Id. (quoting Matsushita, 475 U.S. at 586). Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." Id. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

The government first argues that it is entitled to summary judgment due to the claimant's failure to follow the procedural requirements for filing a claim. Forfeiture proceedings under §881(a) are governed by the Supplemental Rules for Certain Admiralty Maritime Claims. Supplemental Rule C(6) provides that within thirty days after the earlier of the date of service of the government's complaint or completed publication of notice, "a

person who asserts an interest in or right against the property
that is the subject of the action must file a verified statement
identifying the interest or right[.]"  Rule C(6)(i).

A claimant is held to "strict compliance with the provisions
of C(6)." United States v. One Assortment of Eighty-Nine Firearms,
846 F.2d 24, 26 (6th Cir. 1988).  A claimant who fails to strictly
comply with these requirements lacks the statutory standing to
challenge a forfeiture action.  United States v. Currency
$267,961.07, 916 F.2d 1104, 1108 (6th Cir. 1990).  Further, when a
claimant files an answer but has not timely filed a verified claim,
the court may strike the answer.  United States v. $23,000 in
United States Currency, 356 F.3d 157, 163 (1st Cir. 2004).  The
purpose of the verified statement is to prevent the danger of false
claims in forfeiture proceedings by informing the court that the
claimant is entitled to contest the forfeiture action by virtue of
his interest in the defendant property.  Currency $267,961.07, 916
F.2d at 1108.

The Sixth Circuit has stated that courts must look to the law
of the forum state to determine what constitutes verification.
Currency $267,961.07, 916 F.2d at 1108.  Under Ohio law, the term
"verified" means "supported by an affidavit as to the truth of the
matters set forth; sworn to." State ex rel. Shaw v. Lynch, 62 Ohio
St.3d 174, 175 (1991); State ex rel. Clink v. Smith, 16 Ohio St.2d
1, 2 (1968).  Ohio law also states that an affidavit must be signed
by the affiant.  Price v. Price, No. 47618 (8th Dist. unreported),
1985 WL 8521 (Ohio App. 1985).  An unsworn statement signed under
penalty of perjury cannot be substituted for an affidavit; under
Ohio Rev. Code §2319.02, a valid affidavit must be a written

5

declaration made under oath before a proper officer.  <u>Toledo Bar</u>
<u>Ass'n v. Neller</u>, 102 Ohio St.3d 1234 (2004).  The claim forms in
this case do not satisfy these requirements.

The typed signature appearing on the claim forms is
insufficient to constitute verification under Rule C(6).  The
importance of adequate verification is highlighted by the facts of
this case, in which the affidavits submitted by the government
reveal that the claimant, who has now been deported twice for being
an illegal alien, has used at least five different names while in
this country.

Claimant cites the case of <u>United States of America v. Various</u>
<u>Computers and Computer Equipment</u>, 82 F.3d 582 (3d Cir. 1996) for
the proposition that a verified claim is not always required.
However, the circumstances in that case were highly unusual.  The
court relied on the fact that the claimant was not represented by
counsel and had no knowledge of the rule.  In addition, the
asserted basis for the claimant's ownership was that he now owned
the property because he had been ordered to pay restitution in the
amount of the value of the property as a criminal defendant in that
same court.  The Third Circuit reasoned that since the government
and the court were well aware of the alleged source of the
claimant's ownership interest, verification would have been
superfluous.  <u>Id</u>. at 585.  Here, claimant is represented by
counsel, and the basis for his claim is not clearly established.

Claimant also argues that a verification by counsel is
sufficient.  He cites <u>United States v. One 1998 Mercury Sable VIN:</u>
<u>1MEMF50U4WA621967</u>, No. 03-51145 (unreported), 122 Fed.Appx. 760 (5th
Cir. 2004), in which the court held that Rule C(6) allows for

6

attorney verification. However, Supplemental Rule C(6)(a)(ii) states that the "attorney must state the authority to file a statement of interest in or right against the property on behalf of another." No such statement has been filed in this case. See Currency $267,961.07, 916 F.2d at 1108 (notarized signature of attorney alone insufficient to satisfy Rule C(6)'s verification requirement). In addition, counsel in this case did not verify the matters stated in the claim forms, and the claim forms do not contain a notarized signature of counsel.

Due to his failure to comply with the requirements of Rule C(6), the claimant lacks statutory standing to pursue his claim, and the government is entitled to summary judgment on this ground.

The government also argues that the evidence establishes that the defendant property is subject to forfeiture as being drug proceeds or money intended to facilitate drug transactions. In a forfeiture proceeding, the burden of proof is on the government to establish by a preponderance of the evidence that the property is subject to forfeiture as being "furnished or intended to be furnished by any person in exchange for a controlled substance ..., all proceeds traceable to such an exchange, and all moneys ... used or intended to be used to facilitate any violation" of federal drug laws. See 18 U.S.C. §983(c)(1); 21 U.S.C. §881(a)(6); United States v. $174,206.00 in U.S. Currency, 320 F.3d 658, 662 (6th Cir. 2003).

The government has submitted the affidavit of Special Agent Craig Knight of the Drug Enforcement Administration, who describes in detail the drug-related activities of claimant and Ivan Padilla, who rented adjacent apartments at 555 and 557 Evergreen Terrace.

Agent Knight stated that during the execution of a search warrant on October 7, 2003, at the previous residence of Ivan Padilla, a drug ledger was found which documented the distribution of 1,200 pounds of marijuana from the residence. Claimant's phone number was included in the ledger, and documents in the name of Jose Miguel Seda, one of claimant's aliases, were found in the residence.

On April 6, 2004, agents observed a large volume of traffic at and between those addresses after observing claimant and Padilla carry three large bags into 555 Evergreen Terrace. A search warrant was executed at those addresses on April 7, 2004. Approximately 14.5 kilograms of marijuana was found in the basement of 555 Evergreen Terrace, and $138,920.00 in United States currency, packaged in $100 and $500 increments, was found in a dresser drawer in the master bedroom of 557 Evergreen Terrace, claimant's residence. Claimant told agents that the 2002 Chevrolet Avalanche which was registered to him was purchased with money made from his roofing business, but he gave inconsistent statements concerning the purchase price of the vehicle, and claimed not to know where it was purchased. Later that day, Task Force Agent Henry Morehouse conducted a search of ten priority mail boxes using Rocky, a drug detection dog. Eight of the boxes contained shredded currency retired from circulation, one contained currency provided by Agent Morehouse, and one contained the currency seized at 557 Evergreen Terrace. Rocky alerted only to the mail box containing the seized currency.

Agent Craig further stated that on June 28, 2004, claimant was seen leaving a residence at 934 South Richardson Avenue and placing

a cooler in the trunk of his vehicle. Claimant was subsequently pulled over for a traffic stop, and after Bud, a drug detection dog, alerted to the vehicle, 12 pounds of marijuana was found in the trunk. A search warrant was executed at the South Richardson address, resulting in the seizure of an additional 109 pounds of marijuana. Cash in the sum of $14,250.00 was seized on that date during a search of the master bedroom at 557 Evergreen Terrace.

The government has also submitted the affidavit of Special Agent Steven Ray of the Drug Enforcement Administration. Agent Ray stated that claimant indicated that he had a roofing business, but acknowledged that he had paid no taxes for the past five years, either for his business or his employees, who were illegal aliens. Claimant did not have verifiable legitimate income. Documents found in his residence showed that his family received government assistance in the form of a federal Women Infants and Children grant. Claimant also admitted to using aliases.

The affidavits submitted by the government are sufficient to establish by a preponderance of the evidence that the defendant property is subject to forfeiture. The government has submitted evidence of claimant's drug dealing. In addition, the government submitted requests for admissions to claimant which have not been answered or objected to by claimant, and which are therefore deemed to be admitted under Fed.R.Civ.P. 36(a). These include admissions that claimant received the $138,920.00 in exchange for a controlled substance in violation of federal law, and that he purchased the defendant Chevrolet Avalanche with drug proceeds, or that the Avalanche was used or intended to be used to facilitate drug trafficking.

There is no competent evidence that claimant had a verifiable source of legitimate income which could account for his ownership of the defendant property.  The claimant's possession of a large amount of property unrebutted by any evidence pointing to any other source of legitimate income or other evidence of innocent ownership is further support for the government's position.  See $174,206.00 in U.S. Currency, 320 F.3d at 662.  Claimant has submitted no affidavits or other evidence in response to the government's motion for summary judgment to support his argument that the property stemmed from legitimate income.

No genuine issue of material fact has been shown to exist on the question of whether the defendant property is subject to forfeiture, and the government is entitled to summary judgment on this ground as well.

In accordance with the foregoing, the motion for summary judgment is granted.  The court orders that the defendant property, specifically, $138,920.00 in United States Currency and a 2002 Chevrolet Avalanche, VIN 3GNEK13T22G242774, is hereby forfeited to the United States.  The clerk is directed to enter judgment to that effect in favor of the government.

Date: September 7, 2005          s\James L. Graham
                         James L. Graham
                         United States District Judge

10